RICHARDSON, Kirk and Jones, Jessie, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

STATE BOARD OF ELECTIONS, COMMONWEALTH OF KENTUCKY; Warren County Board of Elections, Warren County Clerk, Defendants.

Civ. A. No. C–87–0177–BG(M).

United States District Court, W.D. Kentucky, at Bowling Green.

Feb. 1, 1988.

Richard L. Masters and Theodore H. Amshoff, Jr., Amshoff, Amshoff & Searcy, Louisville, Ky., for plaintiffs.

Asst. Atty. Gen. Nathan Goldman and Gen. Counsel to the Secretary of State Ann Z. Stewart, Frankfort, Ky., for State Bd. of Elections.

Hoy P. Hodges and Michael E. Caudill, Warren County Attys., Bowling Green, Ky., for Warren County Clerk and Warren County Bd. of Elections.

MEMORANDUM OPINION

MEREDITH, District Judge.

The above-styled action was filed pursuant to 28 U.S.C. §§ 2201, 2202, requesting that this Court declare KRS 116.055 as null and void, of no effect and unconstitutional. As further relief, the plaintiffs requested that the named defendants, their agents and employees, be enjoined and/or restrained from enforcement of said statute or from otherwise prohibiting the plaintiffs from voting in the upcoming Presidential preferential primary and regular primary elections of March 8, 1988 and May 24, 1988, respectively.

The plaintiffs contend that provisions of KRS 116.055 cause the plaintiffs to be unconstitutionally disenfranchised, denied equal protection of the law, and deprived of their freedom to associate with the political party of their choice in violation of their rights as afforded by the First and Fourteenth Amendments of the United States Constitution. Jurisdiction over this action is grounded upon 28 U.S.C. § 1331, with venue established pursuant to 28 U.S.C. § 1391(b).

This Memorandum Opinion results from a hearing held on January 27, 1988, in Louisville, Kentucky, pursuant to the plaintiffs' Motion for Preliminary Injunction. Before this Court discusses its findings as they relate to the above-referenced hear-

ing, necessity requires that various pending motions be decided.

■ The defendant, State Board of Elections, has filed a Motion to Dismiss based upon the grounds that the Commonwealth of Kentucky, or any agency thereof, cannot be sued pursuant to Eleventh Amendment immunity. In response, the plaintiff argues that an exception to Eleventh Amendment immunity exists in actions where private parties are seeking to compel state defendants to comply with federal law. See: *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 14 (1908); Wright & Miller *Federal Practice and Procedure: Civil* § 1604. Upon consideration of *Young* and the other precedent cited by the plaintiffs in their response to the defendants' motion to dismiss, this Court is convinced and does rule that this action is appropriate against the defendant, the State Board of Elections. In a further attempt to keep the proper parties before the Court in this action, the plaintiffs' have filed a Motion for Joinder of a Necessary and Indispensable Party. Specifically, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, the plaintiffs have moved that the Honorable Bremer Ehrler, Chairman, State Board of Elections and Secretary of State, Commonwealth of Kentucky, shall be joined as a party defendant in this action. As this motion is legally appropriate, not prejudicial to the original named parties and is in the interest of judicial economy, given the time constraints of this action, the plaintiffs' Motion for Joinder of a Necessary and Indispensable Party shall be granted. Likewise, the Motion to Dismiss of the defendant, State Board of Election, shall be denied.

The facts involving this action are not disputed and are not complex in nature. These facts are established pursuant to evidence presented at the January 27, 1988, preliminary injunction hearing. This evidence consists of the testimony of three witnesses and three exhibits entered into the record.

All three of the witnesses that testified were called by the plaintiffs. The witnesses were both of the plaintiffs, Messrs. Kirk Richardson and Jessie Jones, and Mr. Phillip A. Thompson, State Director of Americans for Robertson Campaign. The three exhibits admitted into the record consisted of: (1) A Kentucky official voter registration record; (2) a Kentucky State Board of Elections' notification of change form; and (3) a summary of state rules of statistics contained on page 1988 of the Congressional Quarterly Weekly Report, Volume 45, No. 35 (August 29, 1987).

A detailed discussion of the facts of this action is not called for as the testimony given at the January 27, 1988, hearing substantially mirrors the allegations contained in the plaintiffs' complaint and subsequent pleadings. Concisely stated, both of the plaintiffs are United States citizens and long time residents of the Warren County, Bowling Green, Kentucky, area. Both plaintiffs have voted in past elections and have been affiliated with the Democratic Party. Both plaintiffs testified that they filed this action upon being informed by the Warren County Clerk that if they changed their political party registration subsequent to October 5, 1987, that they would be precluded from voting in the Presidential and State primaries in 1988 pursuant to Kentucky election laws. Mr. Richardson was told by the Clerk's Office that these laws were in effect to prevent one party from registering its members in an opposing party as a means of nominating the opposing party's weaker candidate through the primary election process.

In this action, Mr. Richardson changed his party registration from Democrat to Republican on or about November 11, 1987. Mr. Jones consulted with the Warren County Clerk's Office some time after October 5, 1987, concerning a change of party affiliation from Democrat to Republican. Testimony elicited from the witnesses further established that individuals recently moved from other states, first time voters who recently attained the age of eighteen or will be eighteen at the time of the general election and voters who are otherwise qualified to vote but have not voted would be permitted to vote in the primaries if they registered to vote at any time thirty days

or more preceding the primary election. The two plaintiffs stated on the record that they desired to change their political affiliation so that they could vote for the candidate of their choice, Pat Robertson, and all three witnesses testified that they had no intention of disrupting or distorting the Republican primaries in Kentucky. Testimony given by Mr. Richardson on cross-examination by defendants' counsel stated that he had made no attempt to change his party registration prior to October 5, 1987. No evidence was presented to indicate whether Mr. Jones attempted to re-register prior to October 5, 1987; however, no evidence was introduced to give any indication that he was prevented or precluded in any manner from doing so.

The rights of the respective parties in this action cannot be contested and are therefore conceded. The individual right to vote and to associate with the political party of one's choice for the advancement of common political goals is fundamental. Likewise, the state is entrusted with the power and authority to supervise elections and set qualifications of voters as a matter of protecting the integrity of the electoral process. In protecting the electoral process, the state must prudently utilize means of supervision that are not so unduly restrictive as to infringe upon basic constitutional protections. It is this argument that the plaintiffs claim in support of their declaratory and injunctive relief requested.

The plaintiffs assert that KRS 116.055 should be declared unconstitutional by this Court because its provisions are unreasonable and have no rational basis to the public interests to be protected and that lesser intrusive means are available to protect the state's legitimate interests. While the plaintiffs, by counsel, have raised several valid arguments with which this Court personally agrees, I am constrained to rule in favor of the defendants given the existing law.

The pleadings and memoranda of law filed by the parties provides the Court with a wealth of precedent that serves their respective positions well. However, in sep-arating the wheat from the chaff, this Court is convinced that its decision in this action must turn on its interpretation of and the distinction between the cases of *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973) and *Kusper v. Pontikes*, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973). The Court is mindful, and will remain so, of the plaintiffs' caveat that courts should not make mechanical application of these cases or use them as a "litmus paper test" in deciding the case at bar. See: *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). However, this Court cannot and will not ignore the guidance and mandates of the United States Supreme Court or the policy considerations behind the principle of *Stare decisis*.

▇ The plaintiffs in this action argue that the provisions of KRS 116.055 serve to unconstitutionally disenfranchise them, deny them the equal protection of the law and prevent them from associating with the political party of their choice in violation of the First and Fourteenth Amendments to the United States Constitution. Furthermore, the plaintiffs contend that the Commonwealth of Kentucky has open to it lesser restrictive or drastic means of protecting its legitimate interest in preventing distortion of its electoral process, i.e., "party raiding." See: *Rosario*, 93 S.Ct. at page 1251; *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983); *Kusper* 94 S.Ct. at page 308.

The plaintiffs rely on the *Kusper* decision to support their position that a lesser obtrusive means is available to Kentucky in preventing "party raiding" in reference to their primary elections. The *Kusper* court stated at page 308:

> If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties. *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 [1960].

The plaintiffs further proffer to this Court that in resolving this constitutional challenge to KRS 116.055, that this Court

should consider "the facts and circumstances behind the law, the interests which the State claims to be protecting and the interest of those who are disadvantaged by the classification." *Storer,* 94 S.Ct. at page 1279 citing to *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972). To this standard, the Court takes no exception.

While I am cognizant of the plaintiffs' warning not to make mechanical application of the *Rosario* and *Kusper* cases, I cannot ignore the similarities of these cases to the instant action or the guidance and instruction provided by the Supreme Court. The similarities between the New York election statute challenged in the *Rosario* case and the Kentucky statute at issue in the instant litigation are substantial.

The plaintiffs contend that the time constraints imposed by KRS 116.055 upon re-registration as it effects their ability to vote in the upcoming primary elections has no rational basis in relation to the State's interest against "party raiding;" that various other classes of voters can register to vote in the primaries up to thirty days preceding the primary thus penalizing the plaintiffs and denying them equal protection of the law and that lesser drastic means of protecting the State's legitimate interest against "party raiding" are available. Each of these arguments were addressed by the *Rosario* court in finding that New York Election Law § 186 was constitutional. For the reasons to be subsequently stated herein, this Court likewise finds Section 116.055 of the Kentucky Revised Statutes to be constitutional.

The effect of Section 186 of the New York election law in the *Rosario* case is very similar, if not identical, to the effect of KRS 116.055. In substance, a voter is required to affiliate with the party of his choice at least thirty days prior to the general election in November in order to vote in the next subsequent party primary. If the voter does not meet this deadline, he cannot participate in a party primary until after the following general election. The plaintiffs in the *Rosario* case did not change their registration for unexplained reasons before the statutory deadline and were therefore prohibited from voting in the next primary. The plaintiffs in the instant action stand on the same footing as the *Rosario* plaintiffs.

The *Rosario* court ruled that the State of New York did not prohibit the plaintiffs from voting in a subsequent primary or from associating with the political party of their choice. As stated on page 1252 of the *Rosario* opinion, "It (New York) merely imposed a legitimate time limitation on their enrollment, which they chose to disregard." This Court finds that the instant action is no less than a mirror image of the *Rosario* case.

The plaintiffs contend that the time limitation imposed by KRS 116.055 has no rational basis for protection against "party raiding" and that less drastic means are available to protect against this harm. This argument was found wanting by the *Rosario* court. This Court will not set forth the *Rosario* court's entire justification of the cutoff date for enrollment as the opinion speaks for itself. See: *Rosario,* 93 S.Ct. at page 1251. However, the *Rosario* court found that the delayed-enrollment scheme was tied to a particularized legitimate purpose and that it was in no way invidious or arbitrary.

The plaintiff alleges that lesser obtrusive means of protecting against "party raiding" is available via a reduction in the time limitation in regard to the cutoff date for enrollment. The Court reminds the plaintiffs that cutoff dates in the *Rosario* case occurred approximately eight months prior to a Presidential primary and approximately eleven months prior to a non-presidential primary. *Rosario,* 93 S.Ct. at p. 1251. These time limitations passed constitutional scrutiny. The Kentucky legislature has provided less drastic means of interference with voters fundamental rights in that the statutory cutoff dates occur approximately five months prior to a Presidential primary and approximately seven months prior to a non-presidential primary.

The plaintiffs argue that other classes of voters are permitted to register to vote in

the primaries as late as thirty days prior to the primary and that the plaintiffs are being penalized and denied equal protection of the law. In *Rosario,* supra, certain exceptions or exemptions from the time limitations for enrollment were provided for pursuant to Section 187 of the New York election law. *Rosario,* 93 S.Ct. at p. 1248. The Kentucky legislature has done no more or less in the instant action. No equal protection violations were found by the *Rosario* court and this Court finds none in the instant action.

Contrary to the plaintiffs' caveat, this Court is compelled to base its ruling in this matter upon the *Kusper* and *Rosario* cases. It comes as no surprise to this Court that the Illinois election law involved in the *Kusper* case was declared unconstitutional while the constitutionality of the New York law in *Rosario,* supra, was upheld. The *Kusper* case involved total disenfranchisement, while *Rosario* involved permissible time limitation of an enrollment period. See: *Kusper,* 94 S.Ct. at p. 309. Based on the similarities of the statutes and the parties involved, this Court can do no less than follow the lead of the *Rosario* court. As stated earlier, the time limitations imposed by KRS 116.055 are clearly less obtrusive than those imposed in the *Rosario* case; time limitations that have already passed constitutional muster. KRS 116.055 was passed by Kentucky legislators as duly elected officials representing their constituencies' desires and signed by another duly elected official, the Governor. As such, this Court will exercise judicial restraint. In this Court's opinion, KRS 116.055 is constitutional and if the time limitations imposed therein should be reduced further, then this is a matter to be addressed to the Kentucky legislature. As this Court stated in *Capps v. Herman Schwabe, Inc.,* 628 F.Supp. 1353, 1359 (W.D.Ky.1986):

> If the statute in question is to be amended it shall be done by the appropriate body, namely the Legislature, not by this Court.

Given the standards for deciding a Motion for Preliminary Injunction as set forth by the Sixth Circuit Court of Appeals in *In Re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985) and based upon this Court's findings as set forth above, the plaintiffs' Motion for a Preliminary Injunction shall be denied. Furthermore, pursuant to Rule 56 of the Federal Rules of Civil Procedure; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) and the evidence introduced at the January 27, 1988, hearing, the plaintiffs' Motion for Summary Judgment shall also be denied. As all relief requested by the plaintiffs as contained in their complaint has been denied by this Court and in accordance with the findings of this Court as set forth above, the above-styled action shall be dismissed as to all named defendants. An appropriate Order shall be entered this date.

## ORDER

In accordance with this Court's Memorandum Opinion entered this date and the Court being otherwise sufficiently advised;

IT IS ORDERED:

1. The plaintiffs' Motion for Joinder of a Necessary and Indispensable Party is hereby granted.

2. The Motion to Dismiss filed by the defendant, State Board of Elections, is hereby denied.

3. The plaintiffs' Motion to Substitute Corrected Motion for Injunction is hereby granted. The plaintiffs' Motion for a Preliminary Injunction is hereby denied.

4. The plaintiffs' Motion for Summary Judgment is hereby denied.

5. The claims of the plaintiffs, Kirk Richardson and Jesse Jones, against each and every defendant named herein are dismissed with prejudice, with each party to bear their own costs.

This is a final and appealable Order.